IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CRAIG COUTURIER, § | Case No.: 2:19-cv-12497 |
| § | |
| *Plaintiff*, § | |
| § | JUDGE IVAN L.R. LEMELLE |
| v. § | |
| § | |
| C. R. BARD, INC. and BARD § | |
| PERIPHERAL VASCULAR, INC., § | |
| § | MAGISTRATE JUDGE |
| *Defendants*. § | DONNA PHILLIPS CURRAULT |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

Plaintiff Craig Couturier by this motion seeks to narrow and simplify the trial of this case by eliminating various meritless affirmative defenses pled by Defendants C.R. Bard, Inc., and Bard Peripheral Vascular, Inc. (collectively "Bard"). Although Bard has failed to develop evidence demonstrating that conduct by any person other than Bard caused Mr. Couturier's filter to perforate his IVC, fracture, and embolize to his heart, Bard nonetheless maintains a bevy of affirmative defenses predicated on the conduct or fault of Plaintiff Craig Couturier or unidentified non-parties. Pursuant to Federal Rule of Civil Procedure 56, Mr. Couturier therefore respectfully asks that the Court grant his partial summary judgment.

**I. FACTS**

Plaintiff Craig Couturier, a Louisiana resident, received an implanted Eclipse Filter in May 2011 after he was diagnosed with a pulmonary embolism and gastrointestinal bleeding. Pl's St. of Material Facts in Supp. of Mot. for Partial Summ. J. ("SOF"), ¶ 1. In October 2016, a broken strut from filter was found in his heart. *Id.*, ¶ 4. Subsequent imaging, and re-review of earlier imaging,

1

demonstrates that his filter had also tilted and penetrated his IVC, into his vertebra, psoas muscle, diaphragm, and other structures. *Id.,* ¶ 5.

Bard designed the Eclipse failure for permanent implantation. *Id.*, ¶ 8. Bard's warnings for the Eclipse Filter failed to recommend any timeline for removing the Eclipse filter, failed to provide guidelines for imaging follow-up for the filter, and failed to adequately warn physicians and patients—including Mr. Couturier and his implanting physician—that the Eclipse filter had a higher rate of failures—including perforation, fracture and component embolization—than other IVC filters on the market. *Id.,* ¶ 7. Mr. Couturier was not warned during the informed consent process that he ought to have the filter removed promptly (or on any particular timeline) or face an increased risk of complications such as perforation, fracture, and component embolization. *Id.* at 13.

Mr. Couturier filed this product liability action against Bard on July 13, 2017. (ECF Doc. 1). Among other things, he asserts claims of strict liability and negligence founded on theories of failure to warn and design defect. *Id.*

In its Answer (ECF Doc. 25), Bard asserts the following affirmative defenses:[1]

(1)     Sole proximate cause (ECF Doc. 25-1 at ¶2);

(2)     Assumption of the risk (*Id.* at ¶¶4, 21);

(3)     Failure to mitigate (*Id* at ¶4);

(4)     Contributory negligence and/or comparative fault of Plaintiff (Defendants' Tenth Additional Affirmative Defense);

---

[1] Bard has agreed to withdraw its affirmative defense of abuse, misuse, abnormal use/handling, or unintended use.

    (5)    Comparative fault of non-parties (Defendants' Eleventh Additional Affirmative Defense); and

    (6)    Superseding and/or intervening cause (ECF Doc. 25-1 ¶¶9, 19).

Although Bard's medical experts are critical of the conduct of Mr. Couturier's implanting physician, Bard's medical experts have not opined that any conduct by Mr. Couturier or any of his treating physicians (or any other third party) caused Bard's filter to fracture, perforate his IVC, or embolize, or otherwise caused or contributed to the injuries he alleges have resulted from his filter failure. *Id.*, ¶¶ 2-3, 9-12.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment should be granted on a claim or defense when the pleadings, discovery, and any affidavits show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Partial summary judgment can be used to dispose of affirmative defenses. *Babin v. Plaquemines Par.*, No. 18-7378-WBV-DMD, 2019 U.S. Dist. LEXIS 176225, at *7 (E.D. La. Oct. 10, 2019). Where a plaintiff moves for summary judgment "to challenge the legal sufficiency of an affirmative defense — on which the defendant bears the burden of proof at trial — a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *Claybrook v. Shemper Seafood Co.*, No. 1:16cv189-HSO-JCG, 2018 U.S. Dist. LEXIS 232003, at *7 (S.D. Miss. July 25, 2018) (*quoting F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994)). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). "If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

### III. ARGUMENT

**A.   THERE IS NO EVIDENCE THAT MR. COUTURIER CAUSED OR CONTRIBUTED TO, OR ASSUMED THE RISK OF, HIS OWN INJURIES.**

To the extent they are predicated upon the alleged conduct of Mr. Couturier, Bard's defenses of failure to mitigate, sole proximate cause, contributory negligence and/or comparative fault, and assumption of the risk fail under governing Mississippi law on the record presented in this case.

Bard's "failure to mitigate" defense fails for want of any evidence of causation. Failure to mitigate is an affirmative defense for which Bard bears the burden of proof. *See MB Indus., LLC v. CNA Ins. Co.*, 74 So. 3d 1173, 1181 (La. 2011). A patient may breach their duty to mitigate by failing to follow reasonable orders from their physician. *Bacle v. Wade*, 607 So. 2d 927, 935 (La. App. 1992). Here, however, the record shows Mr. Couturier routinely sought medical care for the medical conditions he experienced, and while Bard's experts criticize Mr. Couturier's alleged failure to follow up on various instructions by his physicians, they do not link any of these alleged failures to Mr. Couturier's filter failure or any worsening of the consequences of his filter failure. Indeed, there is no evidence that anything he did or failed to do caused his filter to fracture, perforate his IVC, and embolize to his heart. Bard's expert Dr. Sarac described Mr. Couturier's alleged lack of follow-up after his filter struct embolization was discovered but does not identify this after-the-fact conduct as a cause of any injury or damages to Mr. Couturier. *See* Ex. C to Dean Decl. at 27.

The record is also devoid of any evidence that Mr. Couturier caused or contributed to either the failure of his filter, or the injuries he suffered as a result, due to any conduct that would

4

constitute contributory negligence or comparative fault, or that could otherwise be considered the sole proximate cause of his injuries. The party asserting comparative fault bears the burden of proving, by a preponderance of the evidence, that the negligence of the other party was a cause in fact of the incident giving rise to the suit. *See Robert v. Turner Specialty Servs., L.L.C.,* 50245 182 So. 3d 1069, 1076 (La. App. 2015). Crucially, Bard has submitted no expert testimony to establish that any conduct by Mr. Couturier caused or contributed to the failure of the filter at issue or the injuries suffered by Mr. Couturier. Without such proof, Bard's defenses must fail. Additionally, while breach of a duty is an element of the defense of contributory negligence (or comparative fault), *see, e.g., Breaux v. State,* 326 So. 2d 481, 484 (La. 1976), the record here fails to demonstrate that Mr. Couturier—who sought appropriate medical care throughout the events at issue—failed to conduct herself as a reasonably prudent person under the circumstances.

Finally, under Louisiana law, a defense of assumption of risk requires proof that the plaintiff knowingly and voluntarily encountered a risk that caused him harm. In particular, the plaintiff "must understand and appreciate the risk involved and must accept the risk as well as the inherent possibility of danger because of the risk." *Dofflemyer v. Gilley*, 384 So. 2d 435, 438 (La. 1980) Here, the record establishes that Bard failed to recommend any timeline for removing the Eclipse Filter and failed to adequately warn physicians and patients—including Mr. Couturier and his implanting physician—that the Eclipse had a higher rate of failures—including fracture and component embolization—than other IVC filters on the market. SOF ¶ 7. Although Bard's expert agrees with Mr. Couturier's experts that the Eclipse filter should have been retrieved, Bard has not and cannot demonstrate that Mr. Couturier knew of—and willingly encountered—any risks of leaving his filter in place. *See, e.g.,* SOF ¶ 13. Nor is there any evidence that Mr. Couturier knew

5

that Bard's Eclipse Filter had a higher rate of complications than other filters on the market. *See id.* Bard's assumption of the risk defense must therefore fail.

### B. THERE IS NO EVIDENCE THAT ANY NON-PARTY CAUSED MR. COUTURIER'S FILTER TO FAIL.

Bard asserts a variety of defenses predicated on the conduct of non-parties: (1) sole proximate cause; (2) comparative fault of non-parties; and (3) superseding and/or intervening cause. Bard's medical experts, however, have not disclosed any opinions that would provide a causal link between the behavior of any non-party and the filter failure suffered by Mr. Couturier. Nor has Bard disclosed any expert testimony sufficient to establish that any violation of the applicable standard of care caused Mr. Couturier's filter to fail. To establish medical malpractice, a party must show that as a proximate result of the doctor's lack of knowledge or skill or the failure to exercise this degree of care, the patient suffered injuries that would not otherwise have been incurred. La. Rev. Stat. §9:2794(A)(3). This generally requires proof through medical expert testimony. *See, e.g., Pfiffner v. Correa*, 643 So.2d 1228, 1234 (La. 1994). Bard's expert Dr. Poll opines that if Mr. Couturier's filter had been removed earlier, "fragment embolization" would have been avoided, but he does not opine that any physician violated the standard of care by leaving the filter in place, specify any timeline by which removal would have occurred, identify *when* the filter embolization occurred, or link any violation of the standard of care to the filter fracture and perforation that Mr. Couturier suffered, within reasonable medical certainty. *See* Ex. B (Poll Rept.) at 5. Likewise, while Dr. Sarac makes general claims about violations of the standard of care by Mr. Couturier's implanting physicians, neither of Bard's experts links the conduct of these physicians or any other non-party to the fracture, IVC perforation, or embolization experienced by Mr. Couturier. Accordingly, all of Bard's defenses predicated on the conduct of non-parties must fail.

6

## IV. CONCLUSION

For the foregoing reasons, no material fact issue exists, and Plaintiff is entitled to partial summary judgment, on Bard's affirmative defenses of (1) sole proximate cause; (2) assumption of the risk; (3) failure to mitigate; (4) contributory negligence and/or comparative fault of Plaintiff; (5) comparative fault of non-parties; and (6) superseding and/or intervening cause. Accordingly, Plaintiff respectfully prays that the Court grant his Motion for Partial Summary Judgment, and for all other and further relief to which he may be entitled.

Respectfully submitted, this 10th day of May 2021.

**MARTIN BAUGHMAN, PLLC**

Respectfully submitted:

*/s/ Ben C. Martin*
Ben C. Martin (*pro hac vice*)
3141 Hood Street, Suite 600
Dallas, Texas 75219
Phone: (214) 761-6614
Fax: (214) 744-7590
bmartin@martinbuaghman.com

-and-

JOSEPH JOY & ASSOCIATES
Joseph R. Joy, III
P. O. Box 4929
900 South College Road
Suite 204
Lafayette, LA 70502
Phone: (337) 232-8123
Fax: (337) 235-5629
buzzyjoy@josephjoy.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

  I hereby certify that on this 10th day of May 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

              */s/ Ben C. Martin*
              Ben C. Martin