UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CRAIG COUTURIER,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**BARD PERIPHERAL VASCULAR, INC. AND C. R. BARD, INC.,**<br><br>    **Defendants.** | **CASE NO. 2:19-cv-12497**<br><br>**JUDGE IVAN L.R. LEMELLE**<br><br>**MAGISTRATE JUDGE DONNA PHILLIPS CURRAULT** |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants C. R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard") file this Opposition to Plaintiff's Motion for Partial Summary Judgment (the "Motion"), and, in support thereof, respectfully show the Court why the Motion should be denied in its entirety:

### INTRODUCTION

Plaintiff Craig Couturier ("Plaintiff") brought this suit arising out of the 2011 implantation of a Bard Eclipse™ Inferior Vena Cava Filter (the "Filter"), a life-saving, prescription medical device. Plaintiff's prescribing physician, Jose Mena, MD, used his independent medical judgment after a risk-benefit analysis to place the Filter in Plaintiff following a life-threatening complex surgery, a gastrointestinal bleed and pulmonary embolism. It is undisputed that the Filter's placement decision was appropriate given Plaintiff's contraindication for anticoagulants. Statement of Material Facts[1] at ¶¶7, 66, 67. Dr. Mena explained to Plaintiff and his wife the risks and benefits of the Filter and Plaintiff's wife signed an informed consent on her husband's behalf

---

[1] Bard's Statement of Materials Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment and Responses to Plaintiff's Statement of Facts in Support of His Motion ("SOMF"), is being filed contemporaneously with this Opposition.

that warned of the exact risks Plaintiff now complains of in this suit. *Id.* at ¶¶8-11. Dr. Mena never read the Instructions for Use ("IFU") for the Filter prior to placing the Filter in Plaintiff. *Id.* at ¶30. Dr. Mena further admits he failed to comply with significant aspects of the IFU during the placement procedure. *Id.* at ¶¶36-41. Bard's experts, as well as Plaintiff's own experts, opine Dr. Mena did not properly position the Filter and should have immediately removed and deployed a new Filter after noticing the significant tilt. *Id.* at ¶¶68, 69 The summary judgment evidence shows a significant tilt at placement increased Plaintiff's risk for complications. *Id.* at ¶96. Although the IFU recommended routine follow-up subsequent to Filter placement, Plaintiff went five and a half years without any follow-up, thereby failing to comply with his physicians' recommendations to have regular scans to monitor the Filter and alleged Filter fragment. *Id.* at ¶¶27, 42, 51-55.

In the face of this uncontroverted evidence, Plaintiff nonetheless moves for partial summary judgment in an attempt to eliminate the following Affirmative Defenses from Bard's Master Answer (Dkt. 25-1) and Supplement to the Master Answer (Dkt. 25):

(1) sole proximate cause (Dkt. 25-1 at 2.);

(2) assumption of the risk (Dkt. 25-1 at 4. and 21.);

(3) failure to mitigate (Dkt. 25-1 at 4.);

(4) contributory negligence and/or comparative fault of Plaintiff (Dkt. 25 at Tenth Additional Affirmative Defense);

(5) comparative fault of non-parties (Dkt. 25 at Eleventh Additional Affirmative Defense); and,

(6) superseding and/or intervening causes (Dkt. 25-1 at 9. and 19.).

Plaintiff argues he is entitled to summary judgment because Bard has not submitted sufficient expert testimony to establish that Plaintiff or non-parties are the cause of Plaintiff's

injuries. Plaintiff is wrong; the law is clear that Bard has no such burden. It is Plaintiff who has the burden to prove – through competent and reliable expert testimony and to a reasonable degree of medical probability – there was a defect in the specific Filter and that the defect proximately caused Plaintiff's injuries, or a defect in the warnings which proximately caused Plaintiff's injuries. Plaintiff impermissibly attempts to shift the burden to Bard to prove to a reasonable degree of medical probability an alternative cause of his injuries to sustain its defenses. Bard is not required to do so; Plaintiff knows this. To the extent Plaintiff can offer evidence of a defect in this specific Filter proximately caused Plaintiff's injuries, Bard need only offer evidence of potential alternative causes. Bard does not have to prove to a reasonable degree of medical probability any alternative cause of Plaintiff's injuries. Rather, as Bard has amply shown, to the extent Plaintiff can carry his burden (which he cannot), Bard only need offer competent testimony to rebut Plaintiff's theory of causation, which may include evidence of potential alternative causes.

As a result of Plaintiff's misapprehension of the burden of proof for Bard's defenses, Plaintiff effectively seeks an improper ruling that is more akin to a motion in *limine* in an attempt to preclude Bard from presenting the necessary information and evidence for its defense of this case.

First and foremost, Bard is entitled to summary judgment on each and every remaining claim of Plaintiff (Dkt. 122). But as set forth in detail below, genuine issues of material fact preclude summary judgment on Bard's affirmative defenses that Plaintiff erroneously attacks. As to Plaintiff's acts and/or omissions, Bard has established that genuine issues of material fact exists that preclude summary judgment—evidence of Plaintiff's non-compliance with routine follow-up for potential removal of the Filter, as well as Plaintiff's awareness of the risks by his informed consent. Plaintiff readily admits in his Motion: "Bard's experts criticize Mr. Couturier's alleged

3

failure to follow up on various instructions by his physicians" (Mot. at 4) and "Bard's expert agrees with Mr. Couturier's experts that the Eclipse filter should have been retrieved" (Mot. at 5). Bard's expert, Timur Sarac, M.D., a vascular surgeon board certified in vascular and general surgery, opines that inadequate follow up played a role in Plaintiff's alleged injuries. SOMF at ¶106. By failing to seek medical care, Bard's expert, David Poll, M.D., a clinical cardiologist—board certified in internal medicine, cardiovascular disease and nuclear cardiology—opines Plaintiff failed to mitigate his alleged damages by failing to seek reasonable and appropriate medical care. *Id.* at ¶116. As set forth below, a question of material fact also exists as to whether Plaintiff caused or contributed to his injuries. In sum, the evidence establishes Plaintiff assumed the risks of the procedure and then later contributed to his injuries and otherwise failed to mitigate any alleged damages he sustained. Summary judgment as to these well-supported, meritorious affirmative defenses of Bard would be reversible error.

      Bard also can and has shown ample evidentiary support for its defenses that the acts and/or omissions of nonparties caused and/or contributed to Plaintiff's alleged injuries such that it is undeniable that genuine issues of material fact preclude summary judgment. Bard's experts, Dr. Poll and Dr. Sarac, both offer opinions to a reasonable degree of medical probability and/or certainty supporting alternative causes to Plaintiff's alleged injuries and damages. These issues are for the jury to decide. Dr. Sarac opined the implant procedure was not performed within the standard of care and in accordance with the IFU and was the cause of any resultant complication. SOMF at ¶¶102, 109. Dr. Sarac further opines that to the extent a metal fragment from the Filter is located at Plaintiff's heart, allegedly causing Plaintiff injury, the Plaintiff's Filter should have and could have been removed and had it "been promptly removed from [Plaintiff], his fragment embolization would have been avoided." *Id.* at ¶115. Plaintiff's experts also concede an

improperly placed filter increases the risk of complications, and that a significant tilt at implant can lead to greater tilt, perforation and fracture. *Id.* at 96. The above facts preclude summary judgment on Bard's defense set forth above given Dr. Mena's poor operative technique/Filter placement coupled with Plaintiff's own actions and/or inactions that resulted in his alleged complications.

For these reasons and those that follow, Plaintiff's Motion should be denied in its entirety.

## ARGUMENT

I. **Plaintiff, Not Bard, Bears the Burden of Proof on Proximate Causation**

Louisiana law is clear – to prevail under the Louisiana Product Liability Act ("LPLA"), pursuant to which all of Plaintiff's claims must be based, Plaintiff – not Bard – has the burden to prove his "damage was ***proximately caused*** by a characteristic of the product." *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F. Supp. 241, 245 (E.D. La. 1996) (emphasis added). "The initial element ***a plaintiff must establish*** pursuant to the LPLA is that there is proximate causation, that is a link between the actions of the manufacturer and the injury causing product." *George v. Housing Authority of New Orleans,* 906 So. 2d 1282, 1286 (La. Ct. App. 4th Cir. 2005) (emphasis added); *see also Stahl v. Novartis Pharm., Corp.*, 283 F. 3d 254 (5th Cir. 2002). Proximate cause must be established by Plaintiff through expert testimony to a reasonable degree of medical certainty. *Patton v. Boston Sci. Corp.*, NO. CV 15-1976, 2018 WL 4760846, at *2-3 (W.D. La. Oct. 2, 2018); *Bourgeois v. Garrard Chevrolet, Inc.*, 811 So. 2d 962, 967 (La. App. 2002) ("Without expert testimony, the plaintiff cannot carry his burden of proof that the [product] was defective in design or that an alternative design would have prevented plaintiff's injuries."). Because the burden is on Plaintiff to prove that the product caused his injuries, he cannot shift that burden onto Bard merely because Bard raises defenses and alternative causes to challenge Plaintiff's assertions of proximate causation. *See In re Taxotere (Docetaxel) Prods. Liab. Litig.*, MDL No. 16-2740, 2020 WL

5

7480626, at *2 (E.D. La. Dec. 18, 2020) ("*Kahn"*) (holding that raising alternative cause defenses "does not shift the burden to [defendant] to prove that cause other than [the product] caused [plaintiff's injuries]").

II. **Plaintiff Mischaracterizes the Causation Inquiry: The Question is Not What Alternative Cause Led to a Well-Known, Potential Filter Complication; Rather, What Led to *Plaintiff's Injuries***

Not only does Plaintiff improperly attempt to shift his burden of proof on proximate causation onto Bard, but he also argues that Bard has a *different* causation inquiry. That is, rather than setting forth alternative causes to Plaintiff's injuries, Plaintiff argues that Bard has to establish *something else caused well-known complications of all IVC filters, including the Filter, to occur*. This is nonsensical. In his Motion, Plaintiff repeatedly argues that "Bard has failed to develop evidence demonstrating that conduct by any person other than Bard *caused Mr. Couturier's filter to* perforate his IVC, fracture, and embolize to his heart…" (Mot. at 1); "Bard's medical experts, however, have not disclosed any opinions that would provide a *causal link between behavior of any non-party and the filter failure* suffered by Mr. Couturier." (Mot. at 6) (emphasis added). This is not the legal standard in any jurisdiction, including in Louisiana.

Under Louisiana law, causation requires a plaintiff to prove a defect in the product proximately caused *Plaintiff's injuries*. *See George*, 906 So. 2d at 1286. Bard does not need to advance, let alone prove to a reasonable degree of medical probability, alternative causes of the alleged Filter failure.

III. **A Defendant Does Not Need to Prove Alternative Causation**

Louisiana courts have repeatedly and clearly recognized that a defendant does not have the burden to prove alternative causation, through expert evidence or otherwise. *See, e.g.*, *Kahn*, 2020 WL 7480626, at *2. In *Kahn,* Plaintiff moved for partial summary judgment on eleven of defendant's affirmative defenses arguing that the defendant provided no expert proof to support

6

the defenses. *Id.* at *1. The Court summarily rejected this argument, finding that all the defenses at issue concerned alternative causation, which are defenses that point out a defect in the Plaintiff's ability to establish the essential element of causation. *Id.* at 2-3. "[C]ourts have held that because a plaintiff bears the burden of proof on causation, defenses relating to causation are not affirmative defenses." *Id.* (citing *Sowell v. Geico Cas. Ins. Co.*, 2015 WL 3843803, at *1 (N.D. Fla. June 20, 2015) (citing *In re Rawson Food Serv., Inc.*, 846 F.3d 1343, 1349 (11th Cir. 1988)).

IV. **Bard's Experts Do Not Need to Opine on Alternative Causation to a Reasonable Degree of Medical Probability**

Under Louisiana law, a defendant does not need its expert to opine that Plaintiff's injuries were caused by an alternative cause. *See Kahn*, 2020 WL 7480626, at *2 (holding that the defendant did not have to prove that a cause other than its product caused plaintiff's injuries). Nor does a defense expert need to opine on alternative causation to a reasonable degree of medical probability. *Id.* (noting that at trial, the defendant need only challenge plaintiff's causation experts with reliable evidence). Multiple courts in other jurisdictions have held that a defense expert does not need to opine on an alternate cause to a reasonable degree of medical probability, since a defendant does not bear the burden of proof.[2] As this legal precedent makes clear, Bard's experts

---

[22] *See, e.g., R.J. Reynolds Tobacco Co. v. Mack*, 92 So. 3d 244, 248 (Fla. App. 2012) ("Appellee, as the plaintiff below, had the burden of proof with regard to the causation of the decedent's illnesses. ***By excluding Appellant's alternative causation evidence on the basis that its experts could not testify to a reasonable degree of medical probability, the trial court improperly shifted the burden of proof as to causation to Appellant.*** Contrary to the trial court's reasoning, Appellant was not attempting to prove that something else caused the decedent's laryngeal cancer. Instead, it was attempting to diminish Appellee's expert testimony that smoking was the probable cause of the cancer by introducing other possible causes that were pertinent to the decedent's situation." (emphasis added)); *FGA, Inc. v. Giglio*, 128 Nev. June 14, 2012) ("If medical expert testimony is offered to establish causation, it 'must be stated to a reasonable degree of medical probability.' However, if expert testimony is offered to contradict the party opponent's expert testimony, the offered testimony must only be 'competent and supported by relevant evidence or research.'") (citations omitted); *Estate of Wilson v. Iowa Clinic, P.C.*, 2009 Iowa App. Lexis 1569, *17-19 (Iowa App. 2009) (holding that trial court did not abuse its discretion in admitting defense experts' opinions where it was "apparent from the testimony that the opinions were based on scientific and medical resources" even though the doctors testified that "the cause of [plaintiff's] cardia arrhythmia was not immediately known, and could only be surmised through the process of elimination"); *Stinson v. England,* 69 Ohio St. 3d 451, 457 (Ohio 1994) ("The testimony of Dr. Ross that another event was the most likely cause of the injuries was therefore tantamount to an opinion that the cause advanced by appellants was not the probable cause. It was therefore competent evidence which controverted a fact propounded by appellants.").

7

need only offer competent testimony of an alternative cause that diminishes Plaintiff's expert's testimony that a defect in the Filter was the probable cause of his alleged injuries. Bard has unquestionably done so here.

V.  **Genuine Issues of Material Fact Preclude Summary Judgment on any of Bard's Defenses Predicated on Plaintiff's Actions and/or Inaction**

    A.  Plaintiff Failed to Mitigate His Damages by, Among Other Things, Not Following the Advice of His Doctors.

Under Louisiana law, a tort victim has an affirmative duty to make every reasonable effort to mitigate his or her damages. *Campbell v. Robinson*, 10 So. 3d 346, 349 (La. App. 4th Cir. 2009) (citing to La. C.C. art. 2002); *MB Industries, LLC v. CNA Insurance Co.*, 74 So. 3d 1173, 1181 (La. 2011). This duty to mitigate requires that the plaintiff take reasonable steps to minimize the consequences of his injuries. *Id.* Plaintiff admits in his Motion that "[a] patient may breach their duty to mitigate by failing to follow reasonable orders from their physician." (Mot. at 4) (citing *Bacle v. Wade*, 607 So. 2d 927, 935 (La. Ct. App. 1992) (holding plaintiff "obviously breached" his duty to mitigate damages by failing to report his pain complaints to his treating physician and by continuing to work and drive despite his treating physician's admonishment to avoid becoming "too active."))[3]. Without citing to any evidence, Plaintiff then argues the record shows Plaintiff "routinely sought medical care for the medical conditions he experienced." (Mot. at 4). The record actually demonstrates Plaintiff is wrong.

Plaintiff did not seek medical treatment related to his Filter for five years following implantation. SOMF at ¶41. Even *after* the fractured strut was identified through CT imaging, Plaintiff disregarded his treating physician's advice to schedule a subsequent CT scan in three months. *Id.* at ¶51. In fact, Plaintiff did not schedule another imaging study until *three years* later.

---

[3] *See also Britt v. City of Shreveport*, 55 So. 3d 76, 81-82 (La. App. 2nd Cir. 2010) (finding plaintiff's trepidation to undergo lumbar and cervical surgeries, as well as subsequent physical therapy regimen, did not justify plaintiff's refusal to submit to necessary treatment, and holding plaintiff failed to mitigate her damages).

8

*Id.* at ¶53.  Further, on December 19, 2019, Plaintiff's treating physician recommended Plaintiff schedule further follow-up imaging in six months.  *Id.* at ¶55.  To date, Plaintiff *still* has not scheduled any follow-up imaging despite his physician's recommendation fifteen months ago, and his bringing these claims.  *Id.* at ¶55.

Further, Plaintiff contends, without legal support, that Bard's experts "do not link any of these alleged failures to [Plaintiff's] filter failure or any worsening of the consequences of his filter failure." (Mot. at 4.)  Yet, the evidence establishes that had Plaintiff sought follow-up care in the five years preceding discovery of the alleged injury in 2016, Plaintiff would likely have discovered the foreign object embedded in his heart sooner.  SOMF at ¶45 (noting Dr. Mena "thinks this is a chronic thing and it happened sometime ago").  Moreover, Bard's experts *do* link Plaintiff's failure to follow up on various instructions by his physicians.  Dr. Poll opines that Plaintiff's filter "could and should have been removed at such point post operatively and post-GI bleed," and "[h]ad the filter been promptly removed from Mr. Couturier, his fragment embolization would have been avoided."  *Id.* at ¶115.  Dr. Sarac supplies a similar opinion that to the extent "a linear metallic foreign body is in the right atrium, this was likely caused by the improper implantation of the device by Dr. Mena along with a failure to conduct adequate follow-up." *Id.* at  ¶106.

Plaintiff also has not sought medical care and treatment for the very injuries he alleges in this suit. Although Plaintiff alleges to suffer anxiety relating to the condition of the Filter, *id.* at ¶94, Plaintiff continues to ignore his treating physicians' recommendations to undergo imaging to monitor the Filter. Plaintiff also fails to seek medical treatment for his anxiety relating to the Filter. *Id.* at ¶59. In fact, Plaintiff has *never* sought mental health care for his alleged "mental anguish." *Id*. Additionally, Plaintiff failed to seek treatment for heart palpitations – symptoms he attributes to the Filter in this case. *Id.* at ¶116.  To the extent Plaintiff's anxiety and heart palpitations are

9

attributable to the Filter (which Bard denies), Plaintiff failed to mitigate his damages by failing to seek medical care for his complaints and failing to abide by his treating physicians' reasonable orders to undergo follow-up imaging. *See Bacle*, 607 So. 2d at 934.

Plaintiff's actions and inactions in seeking medical treatment are directly probative of the central and contested elements of Plaintiff's claims: whether an alleged defect in the Filter proximately caused Plaintiff's alleged injuries. Plaintiff's conduct raises genuine issues of material fact as to whether Plaintiff breached his duty to mitigate his damages. Accordingly, Plaintiff's Motion for Partial Summary Judgment should be denied.

B.   Plaintiff Assumed the Risks He Complains of by His Informed Consent.

Under Louisiana law, assumption of risk as an affirmative defense is subsumed into Louisiana's comparative negligence regime. *Murray v. Ramada Inns, Inc.,* 521 So. 2d 1123, 1132-33 (La. 1988) ; La. Civ. Code art. 2323 (applying comparative negligence "to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability."). Assumption of the risk looks at Plaintiff's conduct and is "in reality a form of contributory negligence." *Murray*, 521 So. 2d at 1125.   The fact that a plaintiff was aware of the risk(s) is a factor to be considered in assessing percentages of fault.  *Id.* at 1134.

Plaintiff argues in his Motion that Bard has not established Plaintiff assumed a risk because "Bard failed to recommend any timeline for removing the Eclipse Filter," and that it "cannot demonstrate that Mr. Couturier knew of – and willingly encountered – any risks of leaving his filter in place." (Mot. at 5). But risk of the Filter remaining in place is not the only risk that Plaintiff willingly accepted.  Dr. Mena explained to Plaintiff, and his family, the risks and benefits of the Filter placement, including that doing nothing could result in a significant risk of another pulmonary emboli.  SOMF at ¶¶ 4-6, 8. Medical records show Dr. Mena reported in his

10

contemporaneous consultation notes dated May 7, 2011 that the "[r]isks and benefits were explained to the patient and his family," and "[t]hey voiced understanding and wished to proceed." *Id.* at ¶8. Plaintiff, through his wife, provided all appropriate consent to the implant of an inferior vena cava filter following a discussion with Dr. Mena about the risks of the procedure. *Id.* at ¶9. The consent specifically acknowledged Dr. Mena informed Plaintiff of "the risks of the proposed treatment/surgery" as well as the "risks of no treatment." *Id.* Plaintiff accepted these risks by choosing to go forward with the Filter procedure.

Bard has established sufficient evidence such that a genuine issue of material fact exists as to whether Plaintiff's actions contributed to his alleged injuries. Plaintiff's own actions in agreeing to the Filter implantation limits any potential recovery, as Plaintiff was aware of the risks – including especially those complained of here – prior to implantation. Plaintiff, through his wife, provided informed consent to the Filter implant. *Id.* at ¶9. The signed consent includes, among others, warnings of "heart problems" and "displacement of device requiring retrieval." *Id*. at ¶10. Plaintiff's wife testified that she had no reason to doubt the risks were part of the informed consent process. *Id*. By agreeing to proceed with the implant procedure, Plaintiff agreed to assume the risk that the potential complications warned of by Dr. Mena verbally and in the informed consent could occur.

      C.   <u>Plaintiff Contributed to His Injuries Through his Non-Compliance.</u>

Additionally, Bard has adduced sufficient evidence addressed above in Section V.A. to show that Plaintiff's own conduct contributed to his alleged complaints. Plaintiff's continued failure to abide by his treating physician's recommendations to undergo imaging studies, as well as his failure to seek medical treatment for his alleged anxiety and heart palpitations—the injuries alleged to be attributable to the Filter—prevented Plaintiff from discovering the condition of the

11

Filter earlier in time and from receiving medical care for the injuries he alleges to have suffered in this case. SOMF at ¶¶42-55. Dr. Sarac opined that to the extent a metal fragment from the Filter is located at Plaintiff's heart, allegedly causing Plaintiff injury, inadequate follow up by Plaintiff played a role in those alleged injuries. *Id.* at ¶106. As Dr. Poll opines, had Plaintiff followed up sooner, he could have avoided the filter fracture. Id. at ¶115. This creates a genuine issue that Plaintiff contributed to his alleged injuries.

> D. Bard Has Established Alternative Causation Through Plaintiff's Acts and/or Omissions.

As set forth above, Bard's experts offer opinions to a reasonable degree of medical probability and/or certainty that Plaintiff's acts and/or omissions are alternate causes to his alleged injuries. Dr. Sarac opines that to the extent the fractured filter fragment is causing Plaintiff injuries, one of the potential causes is failure to follow-up with Plaintiff's medical providers. *Id.* at ¶ 106. Dr. Poll offers a similar opinion that had proper follow-up occurred, Plaintiff could have avoided his alleged injuries. *Id.* at ¶115. Dr. Poll further opines that Plaintiff failed to mitigate. *Id.* at ¶116. At minimum, Bard has adduced sufficient evidence regarding Plaintiff's conduct to raise a question of material fact as to whether Plaintiff caused or contributed to his own alleged injuries by providing informed consent for the Filter implant, failing to seek medical care following the implant procedure, and failing to abide by his treating physician's recommendations. *See* La. Civ. Code art. 2323(A). Accordingly, Plaintiff's Motion should be denied.

**VI.   Genuine Issues of Material Fact Preclude Summary Judgment on Bard's Defenses Predicated on the Actions of Nonparties**

In product liability cases, a plaintiff must bring forth clear and definite proof establishing the cause of his injury. *Todd v. State Through Dep't of Soc. Servs., Office of Cmty. Servs.*, 699 So. 2d 35, 43 (La. 1997). Mere possibilities and speculation are insufficient to prove causation to a reasonable degree of medical probability. *Richard v. Artigue,* 87 So. 3d 997, 1005 (La. App. 3rd

Cir. 2012). Where there is more than one possible cause to a plaintiff's alleged injuries, a defendant is permitted to present evidence as to any potential alternative and/or intervening causes.

In a product liability case with a failure to warn claim at issue, the learned intermediary doctrine applies, and a plaintiff must prove that the defendant failed to warn (or inadequately warned) the physician of a risk associated with the product that was not otherwise known to the physician, *and* this failure to warn the physician was the proximate cause of the plaintiff's injuries. *Stahl*, 283 F. 3d at 265-266. To prove a design defect, a plaintiff must show that his injury was proximately caused by a characteristic of the product that renders the product unreasonably dangerous in design. *Id.* at 261. And any alleged alternative intervening causes that break the chain of causation are relevant and admissible to Plaintiff's claims, whether they be for alleged defect or alleged failure to warn. Here, Bard has adduced sufficient evidence to show acts and/or omissions of nonparties are independent, intervening and superseding causes.

    A.   Plaintiff's and Bard's Experts Agree the Implanting Physician Improperly Placed the Filter, Thereby Establishing Alternative Causation.

Bard's expert Dr. Sarac expressly opines that "it is more likely than not that the implant procedure was not performed within the standard of care and in accordance with the IFU for the Eclipse device, and was the cause of any resultant complication." SOMF at ¶102. Dr. Sarac provides that based on a review of the implant medical records and Dr. Mena's (the implanting physician) deposition testimony, "it is evident the filter was implanted improperly as there was a severe tilt immediately upon implant." *Id*. at ¶104. Dr. Sarac further explains that "[d]espite Dr. Mena's incorrect implantation, the medical records reveal that no efforts were made at the time of the procedure to rectify this by removing the Filter and placing another one." *Id*. Dr. Sarac also explains that Dr. Mena, plaintiff's implanting physician, "did not actually measure the size of Mr. Couturier's IVC in advance of implanting the filter to rule out a mega cava" or another type of

aberrant anatomy, which makes "a tilt or migration of the filter . . . more likely to occur." *Id.* Based on these facts, Dr. Sarac opined to a reasonable degree of medical probability and/or certainty that the implant procedure performed by Dr. Mena was not performed within the standard of care. *Id.* at ¶102. Dr. Sarac also opines to a reasonable degree of medical probability and/or certainty that to the extent "a linear metallic foreign body is in the right atrium, this was likely caused by the improper implantation of the device by Dr. Mena along with a failure to conduct adequate follow up in accordance with the standard of care." *Id.* at ¶106.

Plaintiff's own case-specific experts agree that Dr. Mena improperly placed the filter, which increased the risk of complications. Plaintiff's expert, Dr. Hurst testified that Dr. Mena did not position the Filter as directed in the IFU. *Id.* at ¶68. He also would have considered removing the Filter if he observed the same 17-degree tilt at placement like Dr. Mena had with Plaintiff. *Id.* at ¶69. Dr. Hurst also believed the poor implant technique and improper placement of Plaintiff's filter limits the efficacy of the Filter. *Id.*

Plaintiff's only other case-specific expert, Dr. Muehrcke, a cardiothoracic surgeon, admitted that if a filter is implanted improperly, there is an increased chance that there will be complications. *Id.* at ¶96. A significant tilt at implant can lead to perforation and fracture – the failures Plaintiff alleges here. *Id.*

These expert opinions directly show that Dr. Mena's failure to exercise the standard of care in his implant procedure of Plaintiff's filter could have caused or contributed to Plaintiff's alleged injuries.

    B.   <u>The Evidence Establishes Superseding and Intervening Causes.</u>

Under Louisiana law, a superseding intervening cause exonerates a defendant in a products liability or negligence action—whether the action is based on allegations of design defect or failure

14

to warn. *See Guille v. Comprehensive Addiction Programs, Inc.*, 735 So. 2d 775, 778 (La. App. 4th Cir. 1999). A proximate cause is any cause, which in natural and continuous sequence is unbroken by any intervening cause. *Hutto v. McNeil-PPC, Inc.*, 79 So. 3d 1199, 1213 (La. App. 3rd Cir. 2011). Bard has established sufficient evidence of intervening, superseding causes.

Dr. Sarac opined to a reasonable degree of medical probability and/or certainty that the improper placement of the Filter was not performed within the standard of care and "was the cause of any resultant complication." SOMF at ¶¶102, 108. Dr. Sarac offers the opinion that the filter, once observed to be as titled as it was, Dr. Mena should have immediately rectified the problem by removing the filter and placing another one. *Id.* at ¶104. Dr. Mena never did so. *Id.* at ¶40. Plaintiff's expert, Dr. Hurst, agrees the significant tilt should have resulted in at least consideration of immediate removal. *Id.* at ¶69. Failure to remove the Filter at this time compromised its efficacy. *Id.* It also increased the risk of complications. *Id.* at ¶96. This evidence creates a genuine issues of material fact that the failure to immediately remove the filter upon improper placement was a superseding, intervening cause of Plaintiff's injuries.

C. <u>Bard has Established Alternative Causation Through the Nonparties' Acts and/or Omissions.</u>

Under Louisiana's comparative fault regime, a plaintiff's recovery is reduced in accordance with the degree of negligence is attributable to the person suffering the injury. La. Civ. Code art. 2323(A). "Louisiana state courts and federal courts have routinely held that pure comparative fault applies to LPLA cases". *Allen v. C & H Distribs., LLC,* 2013 WL 4506233, at *3 (W.D. La. Aug. 22, 2013) (citations omitted).

For example, Dr. Mena conceded he did not follow the IFU in several material ways. Dr. Mena conceded that he did not measure Plaintiff's inferior vena cava prior to implanting the Filter. SOMF at ¶36. Plaintiff's expert, Dr. Hurst, opined that the Filter should not be deployed unless

15

the IVC has been properly measured. *Id.* at ¶72. Dr. Mena conceded at his deposition that he could not remember the amount of pressure that was used when injecting the contract medium through the dilator and thus could not confirm if it was more or less than 800 psi. *Id.* at ¶37. Dr. Hurst agrees that the standard is to not exceed the 800 psi when injecting contrast because otherwise it increases risks of complications. *Id.* at ¶71. Dr. Hurst also agrees that the IFU for the subject Filter specifically indicated that the guidelines developed by the Society of Interventional Radiologists recommend that patients with filters, whether permanent or retrievable, be tracked and receive routine follow up. *Id.* at ¶73. Dr. Mena did not see Plaintiff for any follow-up after the implantation and conceded he, therefore, could not have had a discussion with the Plaintiff about potential removal of the filter. *Id.* at ¶41. Summary judgment evidence here advanced through Bard's experts shows that failure to follow up was below the standard of care, and that an alternative cause of Plaintiff's alleged injuries resulted from the lack of follow-up. *Id.* at ¶¶106, 115. Dr. Mena's acts and/or omissions create a genuine issue of material fact as to comparative fault.

## VII. Sufficient Evidence Exists to Establish that the Fault of Nonparties or Plaintiff Were the Sole Proximate Cause of Plaintiff's Injuries

Plaintiff contends Bard cannot establish that Plaintiff's actions were not the sole proximate cause of his injuries (Mot. at 4), and also that Bard has not established that the actions of nonparties were not the sole proximate cause of his injuries (Mot. at 6). First, Bard does not have the burden through its affirmative defenses to establish the sole proximate cause of Plaintiff's injuries. As noted above, Plaintiff bears the burden to establish proximate causation. *Jefferson*, 930 F. Supp. at 245. Second, Bard does not have to establish just one cause, but rather can establish this defense by competent evidence that Plaintiff's injuries were caused by one of several alternative causes.

16

Bard's Affirmative Defense on sole proximate cause states, "The sole proximate cause of Plaintiffs' damages, if any were sustained, was the negligence of a person or persons or entity for whose acts or omissions Defendants were and are in no way liable." (Dkt. 25-1 at 2.)  In other words, acts or omissions by Plaintiff, or acts or omissions by another person or persons, or acts or omissions by another entity are all possible alternative causes to Plaintiff's alleged injuries – and any one of those were possibly the sole proximate cause.  As set forth above, Bard has established sufficient evidence that several alternative causes could have led to Plaintiff's alleged injuries. Thus, genuine issues of material fact exist as to Bard's sole proximate cause defense.

**VIII.   Even if the Court Were to Entertain Plaintiff's Arguments, Such Arguments are Not Appropriate for Summary Judgment, but Rather a Motion *in Limine***

As laid out in detail above, the evidence establishes genuine issues of material fact preclude summary judgment on any Bard's defenses.  But even more fundamentally, Plaintiff's Motion is nothing more than a thinly veiled—and improperly made—motion in *limine* seeking to preclude Bard from presenting to the jury the necessary information and evidence for its defense.  While Plaintiff contends he "seeks to narrow and simplify the trial of this case by eliminating various meritless affirmative defenses" pled by Bard, Plaintiff misapprehends Rule 56, for nothing in the Rule permits the relief sought by Plaintiff.  Indeed, a review of Plaintiff's Motion demonstrates the evidence Plaintiff improperly seeks to exclude is highly relevant to the core issues in this case.

Other than citations to inapposite authority on burdens of proof, Plaintiff sets forth no law permitting him to seek exclusion of evidence, as proposed here through a motion for summary judgment. That is because "[u]nlike a summary judgment motion, which is designed to eliminate a trial in cases where there are no genuine issues of material fact, a motion *in limine* is designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (citing *Bradley v. Pittsburgh Bd. of Educ.*, 913

17

F.2d 1064, 1069 (3d Cir. 1990)). Plaintiff may not substitute her partial summary judgment motion for a motion *in limine*. *Cf. id.* at 561-62. Because Plaintiff is looking to exclude evidence through his partial summary judgment motion, this Court should reserve ruling on any such arguments until a properly filed motion *in limine* is considered at the appropriate time under the Federal Rules of Evidence.

Specifically, evidence related to alternative causation, assumption of the risk and failure to mitigate will play a central role at trial. As set forth above, Bard is entitled to and will present evidence concerning Plaintiff's course of treatment that are illuminative of causation issues present here. In denying a partial motion for summary judgment filed by a plaintiff seeking judgment on defendant's affirmative defenses sounding in causation, the *Kahn* Court held: "To the extent Plaintiff wishes to dispute the reliability of [defendant's] evidence, Plaintiff can raise these arguments by filing motions in limine." *Kahn*, 2020 WL 7480626 at *2. Bard respectfully submits the same result should follow here.

## **CONCLUSION**

A defendant in a product liability litigation does not bear the burden of proof; rather, a defendant may introduce evidence of possible alternative causes of Plaintiff's alleged injuries in an attempt to negate causation. Further, Bard's experts do not need to opine on alternative causation to a reasonable degree of medical probability. Bard has adduced sufficient evidence to raise questions of material fact as to whether Plaintiff's own actions or inactions, or the actions or inactions of nonparties and Plaintiff's treating physicians, caused or contributed to Plaintiff's alleged injuries. For all of the foregoing reasons, Bard respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment in its entirety.

Dated: May 18, 2021

Respectfully Submitted:

**GREENBERG TRAURIG, LLP**

*/s/ Lori G. Cohen*
Lori G. Cohen (*pro hac vice)*
Terminus 200
3333 Piedmont Road, NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
cohenl@gtlaw.com

Sylvia E. Simson (*pro hac vice*)
MetLife Building
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9275
simsons@gtlaw.com

-and-

**IRWIN FRITCHIE URQUHART**
**& MOORE, LLC**
KIM E. MOORE (#18653)
DAVID M. MELANCON (#23216)
KELLY JUNEAU ROOKARD (#30573)
ALISON A. SPINDLER (#34103)
BRIAN G. REANEY, II (#38382)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: (504) 310-2100
Fax: (504) 310-2101
kmoore@irwinllc.com
dmelancon@irwinllc.com
kjuneau@irwinllc.com
aspindler@irwinllc.com
breaney@irwinllc.com

*Counsel for Defendants Bard Peripheral Vascular, Inc. and C. R. Bard, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 18th day of May 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

                                                                */s/ Lori Cohen*