```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF LOUISIANA

CRAIG COUTURIER                              CIVIL ACTION

VERSUS                                       NO. 19-12497

BARD PERIPHERAL VASCULAR,                    SECTION: "B"(2)
INC. AND C.R. BARD, INC.
```

## ORDER AND REASONS

Before the Court is plaintiff's Motion for New Trial (Rec. Doc. 358) and defendants' Opposition to Motion for New Trial (Rec. Doc. 362). There is no reply. For the reasons discussed below,

**IT IS ORDERED** that the motion for new trial is **DENIED**.

## I.   FACTS AND PROCEDURAL HISTORY

This is a products liability action that was remanded to this Court from the multidistrict litigation captioned *In re: Bard IVC Filters Products Liability Litigation*, MDL 2641, in the United States District Court for the District of Arizona. Plaintiff Craig Couturier brought this action for personal injuries suffered after being implanted with an Inferior Vena Cava ("IVC") filter medical device manufactured by defendants. Rec. Doc. 6-9 at 25.

On May 6, 2011, plaintiff presented to the emergency room with complaints of "headaches, nausea and vomiting." Rec. Doc. 141-1 at 2. He was diagnosed with severe ear infections and meningitis and underwent surgery to treat the ear infections.

1

*Id.* Following surgery, plaintiff "showed an upper gastrointestinal bleed from a Mallory-Weiss tear."[1] *Id.* Plaintiff required multiple transfusions and was anemic. *Id.* at 3. On May 2011, a scan of his lungs showed plaintiff had pulmonary emboli in his left lower lobe.[2] *Id.* Because of his anemia and transfusions, plaintiff could not be placed on blood thinners, but needed to be protected from further pulmonary emboli. *Id.*

Dr. Jose Mena,[3] a board-certified vascular and cardiothoracic surgeon, suggested implanting an IVC filter as a potential treatment for plaintiff. *Id.* An IVC filter is a device that is designed to filter or "catch" blood clots that travel from the lower portions of the body to the heart and lungs. Rec. Doc. 6-9 at 30. After Dr. Mena explained the risks and benefits to plaintiff and his wife, and plaintiff's wife signed a consent form, Dr. Mena then implanted an Eclipse® IVC filter[4] in plaintiff. Rec. Doc. 141-1 at 7, 11-12.

---

[1] A Mallory-Weiss tear is a tear of the tissue of the lower esophagus and is most often caused by violent coughing or vomiting. Left untreated, it can lead to anemia, fatigue, shortness of breath, and even shock. *Mallory-Weiss Tear*, Johns Hopkins Medicine, CONDITIONS AND DISEASES, https://www.hopkinsmedicine.org/health/conditions-and-diseases/malloryweiss-tear (last accessed June 9, 2021).

[2] Deep vein thrombosis occurs when blood clots develop in the deep leg veins. Once these clots reach the lungs, they are considered pulmonary emboli—presenting risk to human health, including death. Rec. Doc. 6-9 at 25.

[3] Dr. Mena practices at Ochsner Health Center and had experience implanting IVC filters (including the Eclipse®) dating back to 2005. Rec. Doc. 141-1 at 12.

[4] The Eclipse® filter is the fifth subsequent model of defendant's IVC filters. Predecessor models included the original Recovery® Vena Cava Filter, followed by the G2®, G2® Express, and G2® X filters. Rec. Doc. 6-9 at 52.

In October 2016, plaintiff presented at the emergency room and a CT showed that a "linear metallic foreign body" was found in plaintiff's right ventricle of his heart. Rec. Doc. 141 at 5. One was found in his lung in November 2016. *Id.* Plaintiff consulted with Dr. Mena and a cardiologist, Dr. Ghiath Mikdadi, and both doctors agreed that the fragment in plaintiff's heart was stable and advised plaintiff to "leave it alone." Rec. Doc. 122-2 at 7. Subsequent scans have shown the fragment is unchanged in position and is stable. *Id.* However, as of December 2019, plaintiff's IVC has been allegedly perforated in eight places and he complains of shortness of breath, irregular heartbeat, and hip pain. Rec. Doc. 141 at 5. Plaintiff alleges he is at risk of the filter further penetrating adjacent organs, which could result in symptomatic or life-threatening injuries. *Id.*

Plaintiff filed his master short complaint for damages in the United States Court for the District of Arizona on July 13, 2017. Rec. Doc. 1 at 4. His short form complaint asserts thirteen causes of action against defendants including strict liability and negligent manufacturing defect (Counts I, V), design defect (Counts III, IV), and failure to warn (Counts II, VII), negligent misrepresentation (Count VIII), negligence per se (Count IX), breach of express and implied warranty (Counts X, XI), fraudulent misrepresentation and concealment (Counts XII, XIII), and

violation of state consumer laws (Count XIV). Rec. Doc. 1 at 3. Plaintiff also alleges punitive damages. *Id.* at 4. The case was then transferred to this Court on September 9, 2019. Rec. Doc. 5.

On July 8, 2021, the Court granted defendants' motion for summary judgment and dismissed all of plaintiff's claims except for his failure to warn claim. Rec. Doc. 303. The Court also denied plaintiff's motion for partial summary judgment on affirmative defenses. *Id.* A jury trial began on July 12, 2021. Rec. Doc. 338. On the first day of trial, the Court revised its summary judgment ruling to reinstate plaintiff's design defect claim. Trial Tr. 5:3-5:13. After nine days of trial, the jury returned a verdict for defendants. Rec. Doc. 334. The Court entered judgment in favor of defendants on July 28, 2021. Rec. Doc. 356. Plaintiff now submits a motion for new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure. Rec. Doc. 358 at 1.

**II. LAW AND ANALYSIS**

    a. **Motion for New Trial Standard**

Rule 59(a) of the Federal Rules of Civil Procedure provides that "[t]he court may . . . grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed R. Civ. P. Rule 59(a)(1). Though "[t]he rule does not specify what grounds are necessary to support such a

4

decision," the Fifth Circuit has found that a new trial is justified if "the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985) (citations omitted). But "[m]otions for a new trial . . . cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990) (citation omitted). Plaintiff argues that a new trial is warranted because the trial was unfair and the court committed prejudicial error. Rec. Doc. 358 at 3.

**b. Whether the Trial was Unfair**

A trial judge may "question witnesses, elicit facts, clarify evidence[,] and pace trial." *Cranberg v. Consumer Union of U.S., Inc.*, 756 F.2d 382, 391 (5th Cir. 1985). But any inquiries from the Court must be aimed at clarifying or managing the trial. *See United States v. Williams*, 809 F.2d 1072, 1086 (5th Cir. 1987). And in questioning or commenting, a trial judge must maintain objectivity and neutrality. *See Johnson v. Helmerich & Payne, Inc.*, 892 F.2d 422, 425 (5th Cir. 1990).

Plaintiff alleges that the Court inappropriately commented, questioned, and intervened during the trial. He contends that the

Court's comments during plaintiff's opening statement of the trial were unwarranted and imparted in the jury a mistaken impression of misconduct by plaintiff's counsel. Rec. Doc. 358 at 4-5. Additionally, plaintiff argues that the Court repeatedly interrupted witness testimony at the detriment of plaintiff. Rec. Doc. 358 at 6-10. The Court's actions, however, do not amount to an unfair trial.

First, the Court's comments were aimed at maintaining the pace of trial. Plaintiff argues that "the Court's intervention into and commentary about Dr. Kandarpa's testimony was to arbitrarily exclude favorable, admissible testimony" so as "to minimize any persuasive effect and confuse the jury." Rec. Doc. 358 at 7. These interventions, however, were not arbitrary. The Court clearly states in the pretrial conference proceedings and the ruling on defendants' motions in limine that Dr. Kandarpa's testimony was only partially admissible "to allow factual evidence on the [EVEREST] study itself" and that limitations on Dr. Kandarpa's testimony was "subject to modification during trial." Rec. Doc. 355 at 12; *see also* Rec. Doc. 316-3 at 4 (stating that Dr. Kandarpa's testimony at trial would be limited to "what was done" in *Peterson v. C.R. Bard*, No. 19-cv-01701 (D. Or. Apr. 20, 2021), and *Johnson v. C.R. Bard*, No. 19-cv-760 (W.D. Wis. May 24, 2021)). The Court's efforts at cabining plaintiff's witness testimony to what was already decided in evidentiary motions and

6

pretrial rulings was well within the Court's discretion to pace trial. *See* Trial Tr. 431:9-432:2 (demonstrating the Court's efforts to avoid cumulative evidence).

Second, the Court's questions throughout the trial were directed to clarify witness testimony. Plaintiff cites multiple occasions where the Court allegedly created an "appearance of impartiality" throughout the trial. Rec. Doc. 358 at 8-11. He claims that the Court would often "assist defense counsel" in examining Defendant's witnesses and "interrupt Plaintiff's questioning . . . to ask questions favorable to the defense." *Id.* at 9-10. But plaintiff fails to show that the Court acted impartially. The Court interrupted both parties throughout the trial to provide clarification for either the jury or the testifying witness. Additionally, the Court instructed the jury to not fault *either* party for technical difficulties, Trial Tr. 396:14-19, and to not take the Court's comments to the lawyers "as in any way demeaning their work." Trial Tr. 383:6. Questioning witnesses during a trial does not mean a court has deviated from objectivity. Here, the Court maintained neutrality.

Third, even if any of the Court's questions or comments could be construed as beneficial to a party, which they weren't, they were cured by the Court repeatedly instructing the jury to disregard any impression that the Court favored either party. *See, e.g.,* Trial Tr. 2422:4-12; *see also Johnson*, 892 F.2d at 426. A

7

limiting instruction is "not a universal panacea to prejudicial remarks," but a review of the trial transcript, coupled with the Court's multiple limiting instructions, convinces that the trial was fair, and plaintiff was not prejudiced. *See Johnson*, 892 F.2d at 426.

### c. Whether the Court Committed Prejudicial Error

Plaintiff maintains that in refusing to admit certain exhibits the Court committed prejudicial error. Rec. Doc. 358 at 7-8. During trial, the Court decided to exclude exhibits 225, 232, 233, 239, 241, 242, 243, 246, and 249 because they had been, or were about to be, discussed in video deposition testimony.[5] Trial Tr. 1155:20-1169:18. Accordingly, the Court found their admission to be cumulative. *See, e.g.*, *id.* 1155:16-22, 1157:12-13.

"A court may grant a new trial when there is an erroneous evidentiary ruling at trial." *See Jordan v. Maxfield & Oberton Holdings, LLC*, 9777 F.3d 412, 417 (5th Cir. 2020). The Court, however, "may exclude relevant evidence if its probative value is substantially outweighed by . . . undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Here, the Court was well within its discretion to exclude evidence deemed cumulative. *See Middleton v. Harris Press & Shear, Inc.*, 796 F.2d 747, 752 (5th Cir. 1986) (finding evidence to be

---

[5] Further, plaintiff twice volunteered during trial that the proposed exhibits "were discussed in deposition testimony that's been played." Trial Tr. 1155: 24-25; *see also id.* 1153:24-1154:1.

8

cumulative when the parties had already presented testimony regarding the excluded evidence). Consequently, no prejudicial error occurred.

New Orleans, Louisiana this 4th day of October, 2021

_____
SENIOR UNITED STATES DISTRICT JUDGE